IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  05-cv-1039-RPM-MJW

SECURITIES AND EXCHANGE COMMISSION,

                Plaintiff,

v.

LOUIS E. RIVELLI, et al.
                Defendants.

### PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT ROBERT T. HOFFMAN'S MOTION TO DISMISS

Plaintiff, Securities and Exchange Commission ("Commission"), files this response in opposition to Defendant Robert T. Hoffman's motion to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6) and 9(b).  As set forth herein, Hoffman's motion should be denied.  Hoffman's motion is largely predicated on a recent case from another circuit which contradicts established Tenth Circuit law in several respects.  Hoffman's motion misstates the pleading requirements in this Circuit for fraud, scienter, and for violations which are not scienter-based. [1]  Hoffman's motion also misstates the elements for aiding and abetting liability in this Circuit.

---

[1]  The  Complaint alleges that Hoffman violated Section 17(a) of the Securities Act of 1933; and violated or aided and abetted violations of Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 thereunder, violated Section 13(b)(5) of the Exchange Act and Rule 13b2-1;and aided and abetted violations of Sections 13(a) and 13(b)(2) of the Exchange Act and Rules 12b-20, 13a-1, and 13a-13.

**I.      The SEC Properly Alleges Facts Supporting the Fraud Claims Against Hoffman**

**A.      Elements of the Fraud Claims**

To establish violations of Section 10(b) and Rule 10b-5, and Section 17(a)(1),[2] the SEC must prove: (1) a material misrepresentation or omission, or other fraudulent device; (2) in connection with the purchase or sale of a security; (3) scienter; and (4) use of the jurisdictional means.  Geman v. SEC, 334 F.3d 1183, 1192 (10th Cir. 2003).  See also, Stichting Pensioenfonds, ABP v. Fisher Communications International, Inc., 2005 U.S. Dist. LEXIS (D.Colo.) 9026 *21-22 and SEC v. Lucent Technologies Inc., 363 F.Supp.2d 708, 714 (D.N.J. 2005) (stating elements of Rule 10b-5(a) and (c)).  While subsection (b) of Rule 10b-5 provides a cause of action based on the "making of an untrue statement of a material fact or the omission to state a material fact," subsections (a) and (c) "are not so restricted" and allow suit against defendants who, with scienter, participated in "a 'course of business' or a 'device, scheme or artifice' that operated as a fraud" on sellers or purchasers of stock even if these defendants did not make a materially false or misleading statement or omission.  Affiliated Ute Citizens v. United States, 406 U.S. 128, 152-53 (1972).  See also, Superintendent of Ins. v. Bankers Life & Cas. Co., 404 U.S. 6, 11 n.7 1971) ("We believe that Section 10(b) and Rule 10b-5 prohibit all fraudulent schemes in connection with the purchase or sale of securities whether the artifices employed involve a garden type variety of fraud, or present a unique form of deception.")  See also, SEC v. Zandford, 535 U.S. 813, 818-822 (2002).

---

[2]     The elements under Sections 17(a)(2) and (3) are the same except the SEC must prove negligence rather than scienter.

2

B.     **Standards of Review under Rule 12(b)(6)**

"The Federal Rules of Civil Procedure erect a powerful presumption against rejecting pleadings for failure to state a claim." Maez v. Mountain States Telephone & Telegraph, 54 F.3d 1488, 1496 (10th Cir. 1995).  Under Rule 12(b)(6), Hoffman has the burden of proving no claim has been stated.  Issa v. Comp USA, 354 F.3d 1174, 1177-78 (10th Cir. 2003) (district court erred in dismissing Complaint merely because plaintiff failed to respond to Rule 12(b)(6) motion).  Dismissal under Rule 12(b)(6) is disfavored and to prevail Hoffman must show *beyond doubt* that the SEC can prove no set of facts in support of its claims that would entitle it to relief.  Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Hughes v. Rowe, 449 U.S. 5, 10 (1980); Issa, 354 F.3d at 1177-78; Robbins v. Wilkie, 300 F.3d 1208, 1210 (10th Cir. 2002).  The issue is not whether the SEC will prevail at trial but whether the SEC is entitled to offer evidence in support of its claims. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).

Under Rule 12(b)(6), the Court must accept the factual allegations in the Complaint as true.  Albright v. Oliver, 510 U.S. 266, 268 (1994).  The Court should draw all reasonable inferences in favor of the plaintiff.[3]  The purpose of Rule 12(b)(6) is to test the formal sufficiency of the claims alleged, not to rule on the merits of the case.[4]

C.     **Standards of Review under Rule 9(b)**

Rule 9(b) requires that the circumstances of fraud be pled with particularity.  Rule

---

[3]   See, Scheuer v. Rhodes, 416 U.S. 232, 236 (1974) ("[i]n general, a Complaint is construed favorably to the pleader"); Pirraglia v. Novell, Inc., 339 F.3d 1182, 1187 (10th Cir. 2003) ("all well-pleaded factual allegations in the . . . Complaint are accepted as true and viewed in the light most favorable to the nonmoving party").  See also, Sanner v. Chicago Bd. of Trade, 62 F.3d 918, 925 (7th Cir. 1995); Bernheim v. Litt, 79 F.3d 318, 321 (2d Cir. 1996).

[4]   Aspen Orthopedics & Sports Medicine LLC v. Aspen Valley Hosp. Dist., 353 F.3d 832, 837 (10th Cir. 2003); Pirraglia, 339 F.3d at 1187.

3

9(b), Fed. R. Civ. P.; Gold v. Morrison-Knudsen Co., 68 F.3d 1475, 1477 (2d Cir. 1995). Rule 9(b) must be read together with Rule 8, which provides for general notice pleading. Abels v. Farmers, 259 F.3d 910, 920 (8th Cir. 2001). Rule 9(b) does not require the pleading of detailed evidence, just fair notice to defendants of the charges. Schwartz v. Celestial Seasonings, Inc., 124 F.3d 1246, 1253 (10th Cir. 1997); Credit & Finance Corp. v. Warner & Swasey Co., 638 F.2d 563, 566 (2d Cir. 1981). Rule 9(b) can be satisfied in two ways by pleading 1) "'the who, what, when, where, and how: the first paragraph of any newspaper story'" or, 2) through the 'alternative means of injecting precision and some measure of substantiation into their allegations of fraud.'" Lucent, 363 F.Supp.2d at 715.

> Rule 9(b) does not require that a Complaint set forth detailed evidentiary matter as to why particular defendants are responsible for particular statements, or that the allegations be factually or legally valid. Instead, Rule 9(b) requires that the pleadings give notice to the defendants of the fraudulent statements for which they are alleged to be responsible. Schwartz, 124 F.3d at 1253.

Rule 9(b) requires that a Complaint set forth the time, place, and contents of the alleged fraudulent statements, as well as the identity of the party making the statements and the consequences of those statements. Id. at 1252.

In the Tenth Circuit, a defendant can be held liable for false statements or omissions even though the defendant did not make the statements or omissions directly to investors. See, Anixter v. Home-Stake Production Company, 77 F.3d 1215, 1226 (10th Cir. 1996) (defendants can be held liable for false statements or omissions they know or should know would reach potential investors). Moreover, the Tenth Circuit recognizes the group-published documents exception in the context of Rule 9(b), under which for purposes of Rule 9(b) it is unnecessary to identify individual sources of statements when

4

fraud allegations arise from misstatements or omissions in group-published documents such as periodic reports, registration statements, and press releases, which presumably involve collective actions of corporate employees. [5]

## D. The Complaint Pleads the Circumstances of Fraud as to Hoffman with Particularity

### 1. Primary Liability

The Complaint adequately alleges a fraudulent scheme in which Hoffman knowingly and/or recklessly participated that, if proven true, would support the fraud claims and entitle the Commission to relief. The facts alleged put Hoffman on notice of the charges so that he can answer and prepare a defense. Rules 9(b) and 12(b)(6) require nothing more.

The Complaint states that Hoffman served as a regional sales manager for Fisher from October 2000 through April 2001, and as the company's National Sales Manager from May 2001 to October 2002. From October 2002 to November 2004, Hoffman was Fisher's Vice President of Sales. (Complaint ¶ 14). The Complaint alleges that Hoffman was responsible for, and participated in, virtually all sales transactions at Fisher during his tenure at the company (Complaint ¶ 53). The Complaint alleges that from January 1, 2000 through September 29, 2002, Hoffman (beginning in October 2000) and other defendants engaged in a fraudulent scheme to inflate Fisher's reported quarterly revenues by prematurely recognizing revenue on transactions in which equipment was warehoused in Fisher-controlled storage and as to which customers had not yet agreed to accept delivery, as well as on transactions as to which there were material unresolved

---

[5] Schwartz v. Celestial Seasonings, Inc., 124 F.3d 1246, 1254 (10th Cir. 1997); In re Ribozyme Pharmaceuticals, Inc. Securities Litigation, 119 F.Supp.2d 1156, 1165 (D.Colo. Oct. 24, 2000); Schaffer v. Evolving Systems, Inc., 29 F.Supp.2d 1213, 1225 (D.Colo. Dec. 14, 1998).

contingencies, including rights of return. (Complaint ¶ 2, 31, 32, 33, 35).   The Complaint alleges that Hoffman profited from this fraudulent scheme by selling Fisher stock (Complaint ¶ 23) and by receiving compensation tied to Fisher's inflated reported revenue (Complaint ¶ 23, 117).

The Complaint alleges that throughout Hoffman's tenure at Fisher, the company's president, Louis Rivelli, held meetings once or more a day at the end of each quarter, at which each sales prospect was discussed in detail, including each customer's requested delivery date for equipment.  The objective of the meetings, which Hoffman attended, was to move possible future sales into the current quarter for the purpose of achieving increased current revenues. (Complaint ¶ 32). At such meetings, Rivelli directed Hoffman and others to offer incentives to customers to induce them to enter into sales contracts, with the explicit understanding that the customers did not agree to take current delivery of any equipment. (Complaint ¶ 33).  The Complaint alleges that the equipment covered by these contracts was instead delivered to warehouses under Fisher's control for extended periods of up a year or more (Complaint ¶ 34).  The Complaint alleges that through these efforts, Hoffman and others knowingly caused Fisher to fraudulently recognize revenue on equipment transactions (Complaint ¶ ¶33, 53). The Complaint alleges that Hoffman was also involved in formulating contingencies on potential sales transactions with knowledge that the company was improperly recognizing revenue on such transactions before the contingencies had been resolved. (Complaint ¶¶54, 55).  The Complaint alleges that Hoffman knew that the reason for obtaining orders on contingent or warehoused transactions was to facilitate improper revenue recognition in the current quarter (Complaint ¶ ¶ 53, 54, 55).

6

The Complaint details three specific examples of transactions in which Hoffman participated, in which he issued secret side letters or agreed to contingent terms with customers. (Complaint ¶ ¶ 59-61).  With respect to one transaction in the second quarter of 2001,  Rivelli directed Hoffman to offer cancellation rights to a customer to induce the customer to sign a sales contract because sales in the current quarter were "light". Hoffman did not disclose the cancellation rights in the sales contract. (Complaint ¶ 60). In another example cited in the Complaint, Hoffman induced a customer to sign a false and misleading sales contract which again did not disclose side terms negotiated by Hoffman, including cancellation rights. (Complaint ¶ 61).  In yet another transaction detailed in the Complaint, Hoffman acknowledged his awareness in correspondence with other Fisher personnel that the transaction remained contingent, with a planned December 2001 delivery, after revenue had been recorded on the transaction by Fisher in September 2001. (Complaint ¶62).

The Complaint details why recognition of revenue on contingent transactions and on equipment warehoused by Fisher was improper (Complaint ¶¶ 30, 31, 36, 37), and alleges Hoffman's knowledge of that impropriety (Complaint ¶¶ 53, 54,).  The Complaint identifies the false statements for which Hoffman is responsible, giving the dates as to each. (Complaint ¶ 106).  The Complaint further details that amount by which Fisher's financial statements were misstated during the period in which Hoffman was knowingly or recklessly participating in the fraudulent revenue recognition scheme. (Complaint ¶ ¶ 108-110).

The Complaint alleges that, to conceal the scheme, Hoffman was involved in preparing and obtaining false and misleading documents and providing them to Fisher's

7

auditors. (Complaint ¶ 4, 74). The Complaint alleges that Hoffman and others participated in a so-called "clean-up period" after the end of each quarter, the purpose of which was to conceal contingencies or warehoused equipment from the company's outside auditors by obtaining customer signatures on backdated and false documentation. (Complaint ¶ 69, 70, 74). The Complaint alleges one example of such "clean-up" work reflected in a July 2001 e-mail from Rivelli to Hoffman, discussing existing contingencies on several transactions from the second quarter ended June 30, 2001, which accounted for at least 51% of Fisher's reported net income for the quarter. (Complaint ¶ 70 ). The Complaint alleges that Hoffman withheld side letters on transactions from the company's auditors with the knowledge that if such side letters were disclosed, the auditors would not allow Fisher to recognize revenue on the transactions. (Complaint ¶ 73 ).

The Complaint alleges that Hoffman's compensation was tied to the company's reported revenues, and details the amount of bonuses received by Hoffman (Complaint ¶ 23, 117), as well as Hoffman's trading proceeds for sales of Fisher's stock during the period of the fraudulent revenue recognition scheme (Complaint ¶ 117).

Hoffman's motion raises two arguments with respect to the fraud allegations: (1) that the Commission has not alleged any specific misrepresentation attributable to Hoffman; and (2) that the Commission has not adequately alleged scienter as to Hoffman. The first argument misstates the elements of a fraud claim under Section 10(b), under the authorities cited above. The Commission need not allege any misrepresentation by Hoffman, since Section 10(b) also encompasses a fraudulent scheme, as is alleged here. Affiliated Ute Citizens v. United States, 406 U.S. 128, 152-53 (1972). See also,

8

Superintendent of Ins. v. Bankers Life & Cas. Co., 404 U.S. 6, 11 n.7 1971); SEC v. Zandford, 535 U.S. 813, 818-822 (2002).

Further, Tenth Circuit law estalishes that a defendant can be held liable for false statements or omissions even though the defendant did not make the statements or omissions directly to investors.  See, Anixter v. Home-Stake Production Company, 77 F.3d 1215, 1226 (10th Cir. 1996) (defendants can be held liable for false statements or omissions they know or should know would reach potential investors).  Moreover, the Tenth Circuit recognizes the group-published documents exception in the context of Rule 9(b) discussed above,  making it unnecessary to identify individual sources of statements when fraud allegations arise from misstatements or omissions in group-published documents such as periodic reports, registration statements, and press releases,as are alleged here. Schwartz v. Celestial Seasonings, Inc., 124 F.3d 1246, 1254 (10th Cir. 1997); In re Ribozyme Pharmaceuticals, Inc. Securities Litigation, 119 F.Supp.2d 1156, 1165 (D.Colo. Oct. 24, 2000); Schaffer v. Evolving Systems, Inc., 29 F.Supp.2d 1213, 1225 (D.Colo. Dec. 14, 1998).

Hoffman's scienter argument is also misplaced. The heightened pleading requirements of the PSLRA do not apply to SEC enforcement actions.[6]  In the Tenth Circuit, the plain language of Rule 9(b) governs the pleading requirements for the Complaint in this SEC enforcement action.  Rule 9(b) specifically provides that "[m]alice, intent, knowledge, and other conditions of mind . . . may be averred generally." In the Tenth Circuit, these words are given their plain meaning, such that "the scienter

---

[6]     The PSLRA only applies to private actions.  Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4(a)(1).

9

requirement of a securities fraud claim may be averred generally at the pleading stage. . ." In re Exabyte Corp. Sec. Litig., 823 F. Supp. 866, 869 (D. Colo. 1993).  See Phelps v. Wichita Eagle-Beacon, 886 F.2d 1262, 1269-70 and n.5 (10th Cir. 1989) (rejecting Second Circuit approach of requiring allegations of facts that create strong inference of scienter because "we cannot reconcile that approach with the plain language of Rule 9(b)");  Scheidt v. Klein, 956 F.2d 963, 967 (10th Cir. 1992) (conclusory allegation of willful or reckless intention satisfies 9(b)); Seattle-First Nat'l Bank v. Carlstedt, 800 F.2d 1008, 1011 (10th Cir. 1986)  (Rule 9(b) does not require *any* particularity in connection with an averment of condition of mind); In re Storage Tech Corp. Sec. Litig., 804 F. Supp. 1368, 1373 (D. Colo. 1992) (citing Phelps for proposition that "[i]n the Tenth Circuit, general averments of intent or other conditions of mind, unaccompanied by supporting facts, are adequate under Rule 9(b)").[7]

In the Tenth Circuit, for securities fraud cases, scienter is satisfied by a showing of recklessness.  Anixter v. Home-Stake Production Company, 77 F.3d 1215, 1232 (10th Cir. 1996).[8]  Although not required to do so in the Tenth Circuit, the Complaint alleges

---

[7]     Moreover, several courts have held that it is sufficient under Rule 9(b) for the Commission simply to plead scienter in the language of the antifraud provisions of the securities laws.  See,  SEC v. Penn Central Co., 450 F. Supp. 908, 917 (E.D. Pa. 1978); SEC v. Jos Schlitz Brewing Co., 452 F. Supp 824, 831 (E.D. Wis. 1978); see also, SEC v. GSC Enterprises, Inc., 469 F. Supp. 907, 910 (N.D. Ill. 1979)(pleading scienter in the language of Section 17(a) of the Securities Act is sufficient for the purpose of Rule (9)(b)).

[8]     The Tenth Circuit defines recklessness as "conduct that is an extreme departure from the standards of ordinary care, and which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it." Anixter, at 1232.

facts which give rise to an inference that Hoffman acted either recklessly or knowingly in committing the fraud violations.

### 2. Aiding and Abetting Fraud Liability

The facts outlined above also adequately allege aiding and abetting of fraud. Hoffman's motion with respect to aiding and abetting fraud allegations is based upon the legally incorrect assertion that the Commission must allege that Hoffman knew Fisher was defrauding the public. Although the facts outlined above support such an inference, Hoffman's argument misstates that test for aiding and abetting liability in this Circuit.

To prove aiding and abetting in the Tenth Circuit, the SEC must prove (1) a primary violation of the securities laws by another; (2) knowledge of the primary violation by the aider and abettor; (3) substantial assistance by the aider and abettor in achieving the primary violation. Anixter v. Home-Stake Proc. Co., 77 F.3d 1215, 1225 (10th Cir. 1996). Knowledge in the context of aiding and abetting liability means an awareness of wrongdoing. Decker v. SEC, 631 F.2d 1380, 1388 (10th Cir. 1980). In the Tenth Circuit, the knowledge element can be satisfied by a showing of recklessness. See, First Interstate Bank, N.A., v. Pring, 969 F.2d 891, 903 (10th Cir. 1992), rev'd on other grounds sub nom, Central Bank, N.A. v. First Interstate Bank, N.A., 511 U.S. 164 (1994); Decker, 631 F.2d at 1388 n.16; Edward J. Mawod & Co. v. SEC, 591 F.2d 588, 595-97 (10th Cir. 1979).[9]

---

[9] Other courts have suggested that scienter may not be necessary to prove aiding and abetting of a section 13(a) violation, because 13(a) itself does not require scienter. Ponce v. SEC, 345 F.3d 722, 737, n.10 (9th Cir. 2002) (citing In the Matter of WSF Corp., 77 S.E.C. Docket 1594, Rel. No. ID–204, *3 (May 8, 2002).

11

Fisher's false filings are enumerated in the Complaint. (Complaint ¶ 108-110). The false filings in which Hoffman participated by facilitating improper revenue recognition on transactions also enumerated. (Complaint ¶ 107). The Complaint pleads facts, as detailed above, supporting awareness of wrongdoing and at the least extreme recklessness on the part of Hoffman. The Complaint alleges that Hoffman participated in structuring transactions with knowledge that the purpose of doing so was to improperly accelerate the recognition of revenue in the company's financial statements. The Complaint alleges the Hoffman entered into contingent terms with customers with the objective of recognizing revenue in such circumstances, which he knew was improper. The timing and frequency of the quarter-end meetings at which the objective was to "move" future transactions into the current quarter, as alleged in the Complaint, also adequately alleges Hoffman's awareness or reckless ignorance that that his conduct was part of an improper scheme. Allegations that Hoffman concealed the terms of side letters and agreements he negotiated with customers from Fisher's internal and external accountants further support an awareness of wrongdoing.

### 3.      Section Fraud 17(a) Allegations

The elements of Section 10(b) and 17(a) are essentially the same. [10] Under the authorities cited above, the Commission is not required to allege any specific misrepresentation by Hoffman. The group-published documents which incorporated the false revenue figures in which Hoffman played a role are set out in the Complaint, and include a prospectus filed with the Commission (which establishes the use of jurisdictional means) for an offering of Fisher securities filed on March 16, 2001, which

---

[10] The elements under Sections 17(a)(2) and (3) are the same except the SEC must prove negligence rather than scienter.

incorporated Fisher's misstated financial statements (Complaint ¶ 106). It is well-established that statements in periodic filings satisfy the "in connection with" requirement. Rana Research, Inc., 8 F.3d at 1362. See also SEC v. Texas Gulf Sulphur Co., 401 F.2d 833, 862 (2nd Cir. 1968) (en banc) ('In connection with' requirement satisfied "whenever assertions are made, as here, in a manner reasonably calculated to influence the investing public"); Anixter v. Home-Stake Production Company, 77 F.3d 1215, 1226 (10th Cir. 1996) (defendants can be held liable for false statements or omissions they know or should know would reach potential investors).

## II. False Books and Records and Internal Controls Violations (Fourth and Seventh Claims)

The fourth and seventh claims allege that Hoffman violated Exchange Act Section 13(b)(5) and Rule 13b2-1 by knowingly circumventing internal accounting controls and directly or indirectly falsifying or causing to be falsified books, records, or accounts. Rule 13b2-1, promulgated under Section 13, provides that no person "shall, directly or indirectly, falsify or cause to be falsified, any book, record or account subject to section 13(b)(2)(A) of the Securities Exchange Act. 17 C.F.R. §240.13b2-1. Scienter is not an element of Section 13 claims.[11] Contrary to Hoffman's motion, case law is not clear on whether Rule 9(b) should apply to Hoffman's violations of Section 13(b)(5) and Rule

---

[11] See SEC v. McNulty, 137 F.3d 732, 741 (2d Cir. 1998) (scienter not required to prove violations of Sections 13(a) and 13(b) of the Securities Exchange Act); SEC v. Savoy Indus., Inc., 587 F.2d 1149, 1165 (D.C. Cir. 1978) (SEC need not prove scienter to establish a violation of Section 13); SEC v. World-Wide Coin Investments, LTD., 567 F.Supp. 724, 749 (N.D. Ga. 1983) (there is no scienter requirement under Section 13(b)(2)(A)).

13

13b2-1.[12]  In any event, the Complaint pleads facts with particularity supporting the claim.

The Complaint alleges that, during Hoffman's tenure at Fisher, the company's books and records were false and misleading in that they did not accurately record the terms of transactions on which revenue was being recognized (Complaint ¶¶ 98, 99). Hoffman knowingly and/or recklessly caused the company's books and records to be falsified by failing to include the true terms of transactions in the company's records, as described above. Hoffman similarly violated the internal control provisions of the federal securities laws by knowingly failing to record transactions in accordance with GAAP. (Complaint ¶¶ 100-101 ).

### III. The SEC Properly Alleges Facts Supporting Charges of Aiding and Abetting Materially False SEC Filings (Sixth Claim)

The Complaint adequately pleads all elements of the aiding and abetting of Fisher's Section 13 violations set forth in the sixth and seventh claims. The elements of aiding and abetting liability in this Circuit are stated above. The Complaint details the filings made by Fisher which were materially false (Complaint ¶¶ 108-110) and specifies those filings for which Hoffman is liable (Complaint ¶ 106). The allegations as to Hoffman detailed above with respect to the fraud charges additionally allege an awareness of wrongdoing and even extreme recklessness on the part of Hoffman with respect to the false filings. Accordingly, Hoffman's conduct as alleged in the Complaint

---

[12] Hoffman states that Rule 9(b) applies to his Section 13 violation, citing a non-binding district court case from New Jersey. SEC v. Lucent Tech., Inc., 363 F.Supp.2d 708, 727-28 (D.N.J. 2005). Other non-binding authority indicates otherwise. SEC v. System Software Associates, Inc., 145 F.Supp.2d 954, 958 (N.D.Ill. 2001) (Rule 9(b) found not to apply to Section 13 claims because scienter is not an element to the violations).

supports charges that he aided and abetted Fisher's Section 13 violations.[13]

## IV. Conclusion

Based on the foregoing, the SEC's claims as alleged in the Complaint meet the pleading requirements of Rules 12(b)(6) and 9(b), Fed. R. Civ. P. Accordingly, the SEC respectfully requests that the Court deny Hoffman's motion in all respects.

Respectfully submitted, August 31, 2005.

/s/ Julie Lutz
Julie K. Lutz             303.844.1056
Zachary T. Carlyle    303.844.1084
Attorneys for Plaintiff
Securities and Exchange Commission
1801 California Street, Suite 1500
Denver, CO  80202
Switchboard           303.844.1000
Fax                          303.844.1068

---

[13] Rule 9(b) does not apply to these allegations because scienter is not an element of the Section 13 violations. <u>SEC v. System Software Associates, Inc.</u>, 145 F.Supp.2d 954, 958 (N.D.Ill. 2001) (Rule 9(b) found not to apply to Section 13 claims because scienter is not an element). Further, Rule 9(b) does not apply because the underlying Section 13 violations are nonfraud claims and the Complaint clearly alleges GAAP violations by Fisher), which could support the Section 13 violations on a showing of negligence, without considering whether fraud had occurred. <u>See</u>, <u>Schwartz v. Celestial Seasonings, Inc.</u>, 124 F.3d 1246, 1251-52 (10th Cir. 1997) (Section 11 securities claim not premised on fraud and did not trigger Rule 9(b) scrutiny). <u>Compare</u>, <u>Shapiro v. UJB Financial Corp.</u>, 964 F.2d 272, 287-88 (3d Cir. 1992) (holding that when Section 11 and 12 claims are grounded in fraud rather than negligence, Rule 9(b) applies). Statements filed with the Commission which are not prepared in accordance with GAAP, are presumed to be misleading and inaccurate. Regulation S-X (17 C.F.R. § 247 *infra*, support the alleged violations with particularity.

## CERTIFICATE OF SERVICE

I hereby certify that on this 31st day of August, 2005, I electronically filed the foregoing **PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT ROBERT T. HOFFMAN'S MOTION TO DISMISS** with the Clerk of the Court by CM/ECF and by e-mail to those not in the CM/ECF system:

**Charles B. Hecht**
Cara F. Thornton
Hamil/Hecht, LLC
140 East 19th Avenue
#600
Denver, CO 80203
U.S.A
303-830-1383
Fax: 303-830-1057
Email: checht@h-hllc.com

**Josiah Oakes Hatch, III**
Ducker, Montgomery, Aronstein & Bess, P.C.
1560 Broadway
#1400
Denver, CO 80202
U.S.A
303-861-2828
Fax: 303-861-4017
Email: jhatch@duckerlaw.com

**David A. Zisser**
Isaacson Rosenbaum, P.C.
633 - 17th Street
#2200
Denver, CO 80202
U.S.A
303-256-3952
Fax: 303-292-3152
Email: dzisser@ir-law.com

**Tammy Albarran**
Morrison & Foerster, LLP-San Francisco CA
425 Market Street
San Francisco, CA 94105-2482
U.S.A
415-268-7657
Fax: 415-268-7522
Email: talbarran@mofo.com

**Martin Melville Berliner**
Berliner McDonald, P.C.
5670 Greenwood Plaza Boulevard
#418
Greenwood Village, CO 80111-2408
U.S.A
303-830-1700
Fax: 303-830-1705
Email: mberliner@berlinermcdonald.com

**Sven C. Collins**
Holme, Roberts & Owen, LLP-Denver CO
1700 Lincoln Street
#4100
Denver, CO 80203
U.S.A
303-866-0258
Fax: 303-866-0200
Email: sven.collins@hro.com


s/ Julie K. Lutz
Julie K. Lutz